UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM RYDELL FISHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:22-cv-00076-AGF |
| | ) |
| CORIZON HEALTHCARE and | ) |
| CENTURION HEALTH, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiff, an inmate at the Missouri Department of Corrections ("MDOC"), has filed a pro se complaint under 42 U.S.C. § 1983 alleging deliberate indifference to his medical needs. The matter is now before the Court on the Motion for Summary Judgment of Defendant Centurion of Missouri LLC (improperly named "Centurion Health" and hereinafter referred to as "Centurion").[1] ECF No. 36. Centurion filed this motion on July 19, 2024, properly supported by a Statement of Uncontroverted Material

---

[1] This Memorandum and Order addresses the motion for summary judgment that was filed by Centurion, only. The case was automatically stayed against Defendant Corizon Healthcare after it notified the Court on October 26, 2023, that it had declared bankruptcy. ECF No. 20. Therefore, the Court only analyzes Plaintiff's claim against Centurion and the conduct attributed to it after Centurion began providing medical services for the MDOC on November 15, 2021. *See Brown v. Corizon Inc.*, No. 2:22 CV 52 DDN, 2023 WL 156855, at *11 (E.D. Mo. Jan. 10, 2023) (finding that the plaintiff's claims against Centurion for Corizon's prior actions were not allegations of a constitutional violation resulting from a policy, custom, or action of Centurion and dismissing the case against Centurion).

Facts and the documentary evidence upon which Centurion relies.[2] Although Plaintiff filed a response opposing the motion,[3] even when Plaintiff's pro se pleadings are construed broadly, he has failed to comply with the requirements of Local Rule 4.01(E) and to rebut the assertions in Centurion's Statement of Uncontroverted Material Facts.[4] Accordingly, "all matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment" to the extent properly supported by the record.  E.D. Mo. L.R. 4.01(E); *see also Ridpath v. Pederson*, 407 F.3d 934, 936 (8th Cir. 2005); *Buttenhoff v. St. Louis Cnty.*, No. 4:22-CV-

---

[2] Centurion relies on Plaintiff's medical records from the Department of Corrections Medical Accountability Records System as well as the Affidavit of Dr. Philip Tippen, an internal medicine specialist with over 28 years of experience who was the Statewide Medical Director for Centurion at the time of filing his affidavit.  Dr. Tippen previously worked as a physician for Centurion and Corizon during the periods referenced in Plaintiff's complaint and supplementary filings.

[3] Plaintiff has filed three documents setting forth his opposition to the Centurion's motion for summary judgment.  ECF Nos. 46-48.  In his submissions, Plaintiff restates his complaint and attaches photocopies of some of Centurion's documentary evidence, makes unsupported allegations that some documentation provided by Centurion in support of its Statement of Uncontroverted Material Facts was doctored or fabricated, and despite handwriting some responses on a copy of Centurion's Statement of Uncontroverted Material Facts, does not contradict or object to any of Centurion's asserted material facts.

[4] "Every memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts…[which must set forth each relevant fact as to which the party contends a genuine issue exists].  The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies.  The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts."  E.D. MO. L.R. 4.01(E).

323-JAR, 2024 WL 2746647, at *1 (E.D. Mo. May 29, 2024); *Cockrell v. Bowersox*, No. 4:21-cv-1260-JAR, 2024 WL 358085, at *1–2 (E.D. Mo. Jan. 31, 2024).

For the reasons set forth below, Centurion's motion for summary judgment will be granted.

## BACKGROUND

For the purpose of the motion before the Court and pursuant to Local Rule 4.01(E), the record establishes the following. On March 13, 2023, Plaintiff filed an amended complaint on March 13, 2023, pursuant to 42 U.S.C. § 1983, alleging that Centurion was deliberately indifferent to his medical needs for categorizing him as "Priority 2" under their prioritization policy and failing to treat his Hepatitis C ("HCV").[5] ECF No. 5, Compl. at 11-17; ECF No. 11, Supp. at 2-8.

HCV is a condition that causes inflammation in the liver and can lead to cirrhosis. ECF No. 38, Def's SUMF ¶ 7. The development of cirrhosis from HCV can take decades to progress. *Id.* Those with hepatitis may suffer significantly impaired liver functioning, which may result in symptoms such as "severe pain, fatigue, difficulty or pain with urination, and an increased risk of heart attacks." *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1034 (8th Cir. 2018). "Individuals suffering from chronic HCV develop fibrosis of the liver, in which healthy liver tissue is replaced with scar tissue. Patients are

---

[5] Plaintiff also brought a § 1983 claim alleging deliberate indifference against the MDOC and Corizon Healthcare. The Court dismissed plaintiff's claim against the MDOC based on sovereign immunity on September 22, 2023. ECF No. 12. As noted above, the Court stayed the case against Defendant Corizon Healthcare.

3

said to suffer from cirrhosis when a significant portion of the liver has been converted into scar tissue." *Id.*

There has been significant medical advancement in the treatment of HCV over the last decade. "While previous treatments demonstrated only low rates of success and often caused substantial side effects, new direct-acting antiviral drugs ("DAA drugs") are estimated to cure over 90% of patients who receive them as treatment. DAA drugs are also estimated to cause a 90% reduction in the risk of liver-related mortality. Those effects, however, may diminish if treatment is delayed." *Id.* "The medical standard of care put forward by organizations such as the Infectious Diseases Society of America and the American Association for the Study of Liver Diseases now recommends that almost all persons with chronic HCV receive DAA drug treatment." *Id.*

There are several tests to monitor a patient's risk for cirrhosis. One method for determining the presence and degree of cirrhosis or fibrosis is the AST to Platelet Ratio Index, or APRI. *Id.* The APRI is derived by analyzing a blood sample of the patient and determining the ratio of a particular enzyme to the number of platelets. *Id.* "The lower the APRI score (less than 0.5), the greater negative predictive value (and ability to rule out cirrhosis) and the higher the value (greater than 1.5) the greater the positive predictive value (and ability to rule in cirrhosis); midrange values are less helpful." Affidavit of Dr. Philip Tippen, ECF No. 38-1 ¶ 11. APRI alone is likely not sufficient to rule out disease, but there is evidence that the "use of multiple indices in combination (such as APRI plus FibroTest) or an algorithmic approach may result in higher diagnostic accuracy than using APRI alone." *Id.* The fibrosis 4 (FIB-4) index "is a liver fibrosis biomarker that is

4

a potential alternative to liver biopsy for diagnosing and managing liver disease." *Id.* ¶ 12. "Individuals with a high risk have a score greater than or equal to 3.25 and those with a low risk have a score less than 1.3." *Id.*

In his "Statement of Claim," Plaintiff asserts that in 2007, he first requested treatment for HCV, but that the medical staff at the Algoa Correctional Center refused to treat him. ECF No. 5, Compl. at 11. Plaintiff claims that he requested HCV treatment again in 2010 due to chronic pain and that he was denied care by the camp doctor. *Id.*

In 2015, Plaintiff asserts that he made "multiple requests" for treatment while suffering from "fatigue, migraines, joint pain, rashes covering his body, numbness in limbs, and shoulder pain." *Id.* In 2017, Plaintiff asserts that "the staff at [the] Ozark Correctional Center had to order the medical staff to call an ambulance for [him]" after he twice declared a medical emergency, "but was ignored by the nurse on duty" and "sent back to his housing unit without treatment." *Id.* He later lost consciousness, leading to a three-day hospitalization. *Id.*

In 2019, Plaintiff states that he asked to see an outside doctor in order to establish a treatment regimen "for body pain, numbness, [diarrhea], and other ailments caused by his untreated [HCV]." *Id.* at 12. The request was denied and Plaintiff alleges that he has continued to suffer to the "present day." *Id.*

Plaintiff claims that all defendants are responsible for his HCV treatment because he is "entrusted to their care by the courts." *Id.* In particular, he asserts that the MDOC is "responsible for the healthcare of the detention center the Plaintiff was ordered to be held at," and that Centurion has an "obligation to provide healthcare" and "[has] specific

5

procedures to follow when an offender asks for help." *Id.* He claims that "these organizations, via their employees, blatantly ignored their obligations and procedures, resulting in the aforementioned ailments and suffering of the Plaintiff." *Id.* Plaintiff states that he required HCV treatment, but that his requests were "denied on multiple occasions." *Id.*[6]

Centurion's provision of medical care to inmates within MDOC facilities began on November 15, 2021. ECF No. 38, Def's SUMF ¶ 2. Centurion asserts that after November 15, 2021, the first time Plaintiff sought treatment from Centurion for symptoms he attributed to HCV was in June of 2022. *Id.* ¶ 11.[7]

---

[6] While each of the examples asserted by Plaintiff in his complaint pre-date Centurion's provision of medical services at MODOC facilities, the Court received an additional exhibit from Plaintiff on July 3, 2023, concerning his request for medical services from Centurion. Plaintiff submitted a grievance dated June 26, 2023, written on the letterhead of Centurion, complaining that from April 26 to April 27, 2023, he called for medical emergencies multiple times due to severe pain in his side and back but did not receive treatment. ECF No. 11, Supp. at 3. Coupled with Plaintiff's allegation that Centurion maintained a policy of prioritizing certain patients with HCV that resulted in his denial of care, and viewing Plaintiff's allegations as true and drawing all reasonable inferences in his favor, this Court denied Centurion's motion to dismiss Plaintiff's claims. *See Fisher v. Corizon Health Care*, No. 2:22-cv-00076-AGF, 2023 WL 8545180, at *2-3 (E.D. Mo. Dec. 11, 2023). At this stage, however, Plaintiff has provided no evidence to show his request for medical care was related to his HCV, that Defendant was made aware of his request for medical care, or that he suffered harm from a lack of prompt medical care. Indeed, the response to the grievance filed by Plaintiff indicates that there was no documentation that medical was notified of his request for medical assistance. ECF No. 11, Supp. at 2; *see also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk."); *Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) ("inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.") (internal quotation and citation omitted).

[7] While Centurion asserts that Plaintiff first affirmatively sought treatment for his

On June 15, 2022, Plaintiff made a sick call complaining of HCV symptoms including fatigue and diarrhea.  *Id.* ¶ 11.  Centurion reviewed Plaintiff's prior labs from March 4, 2021, and April 19, 2022, and determined that Plaintiff's condition was stable.  *Id*. ¶ 18.  Between March 2021 and April 2022, Plaintiff's APRI score dropped from .659 to .420 and his FIB-4 score changed from 1.86 to 1.82.[8]  *Id.* ¶¶ 13; 15.  Based on these levels, Plaintiff was categorized as "Priority 2."[9]  *Id.* ¶ 18.  According to Centurion this categorization is used by medical staff to monitor patients and provide medical staff more information.  *Id.* ¶¶ 18-19. The designation does not prevent a patient's access to treatment.  *Id.*  Instead, treatment is determined based on the provider's "clinical-decision

---

HCV in June 2022, they have also acknowledged that on April 30, 2022, Plaintiff sought medical care for stomach pain and diarrhea and raised concerns that it could have been related to his HCV. ECF No. 38, Def's SUMF ¶ 10.  Centurion responded by taking Plaintiff's vitals and recommending a clear liquid diet for 24 hours, instructing Plaintiff to return if his condition did not improve in 48 hours, and educated him on HCV.  *Id.*

[8]   It is unclear from Centurion's documentary evidence whether Plaintiff's scores increased slightly or decreased slightly.  Centurion asserts that Plaintiff's APRI score increased from .420 to .659 and his FIB-4 score increased from 1.82 to 1.86.  ECF No. 39, Def's. SUMF at ¶¶ 13; 15.  Centurion's Affiant, Dr. Tippen, by contrast, states that Plaintiff's APRI score decreased from .659 to .420 and his FIB-4 score increased from 1.82 to 1.86.  Affidavit of Dr. Philip Tippen, ECF No. 38-1 ¶ 10.  But Centurion's supporting documentation, the doctor's notes accompanying Plaintiff's June 15, 2022, visit, appear to indicate that Plaintiff's APRI score decreased from .659 to .420 *and* his FIB-4 score decreased from 1.86 to 1.82.  ECF No. 38-1, Med. R. at 445.

[9]   According to Centurion's documentary evidence, "Priority 2" is assigned in cases involving "HIV or Hepatitis B Co-infection, APRI of greater than .7 -1.99, Stage 2 Fibrosis, DM, Comorbid Liver disease, or E-GFR [less than] 59."  ECF No. 38-1, Med. R. at 446.  Priority 1 is assigned in cases of "[a]dvanced hepatic fibrosis/cirrhosis, liver transplant recipients, HCC, comorbid Hepatitis C conditions, immunosuppressant medication, offenders already on treatment---fibrosure F3 or F4."  *Id.*

7

making." *Id.* Centurion developed a plan of care that included monitoring Plaintiff's labs and a chronic care visit every 12 months. *Id.* ¶ 17.

On July 29, 2022, Plaintiff made a sick call complaint because his side hurt, he felt weak, had lost weight, had frequent urination, cramps in his side, and could not grip. *Id.* ¶¶ 21-22. The nurse noted no major concerns and scheduled a future appointment for Plaintiff with a higher-level provider. *Id.* ¶ 22.

On September 15, 2022, Plaintiff was seen for a prolonged case of diarrhea. He was prescribed medication and Centurion ordered several tests. *Id.* ¶ 24. On September 20, 2022, Plaintiff underwent an abdominal ultrasound that showed his liver was of normal size, showed some suggestion of hepatic steatosis or intrinsic hepatocellular disease, and showed no capsular scalloping or intrahepatic mass. *Id.* ¶ 25. On September 29, 2022, Plaintiff underwent blood tests which concluded his APRI score was .607 and his FIB-4 was 1.97. *Id.* ¶ 26. Centurion ordered further labs on October 6, 2022, to monitor Plaintiff's HCV which showed slightly elevated levels of certain enzymes Centurion used to monitor Plaintiff's HCV. *Id.* ¶¶ 28-29.

On November 2, 2022, Plaintiff was prescribed the DAA drug Epclusa to be taken daily for twelve weeks to treat his HCV and received his first dose on November 10, 2022. *Id.* ¶¶ 30-33. Plaintiff completed his Epclusa treatment on January 25, 2023. *Id.* ¶ 36. Plaintiff's viral load was checked on May 4, 2023, and was undetectable, indicating successful HCV treatment. *Id.* On June 2, 2023, Plaintiff had a follow up appointment concerning his HCV treatment with an outside provider. *Id.* While Plaintiff made

8

various requests for care after May 4, 2023, he did not seek further treatment for his HCV.[10]

## ARGUMENTS OF THE PARITES

Centurion has moved for summary judgment and argues that Plaintiff has not provided evidence to support even a prima facie case of deliberate indifference. Centurion argues that the record reflects that Plaintiff was regularly examined and received successful treatment for his HCV that rendered the virus undetectable during the time period that it was providing medical services at MODOC facilities. Centurion also argues that Plaintiff's conclusory allegations of non-treatment are unsupported and that he cannot prove any of the elements required to demonstrate liability under *Monell*.[11]

In response, Plaintiff re-states the arguments from his complaint and makes unsupported allegations that some of Centurion's documents have been altered. Plaintiff offers no additional argument or evidence in support of his allegations.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Smith v. Lisenbe*, 73 F.4th 596, 600 (8th Cir. 2015).

---

[10] On July 19, 2023, Plaintiff was seen for hip and leg pain unrelated to his HCV, referred to a higher-level provider and instructed on a range of motion exercises. ECF No. 38, Def's SUMF ¶ 38. On September 26, 2023, Plaintiff received a CT to monitor a renal lesion and saw an outside provider for the lesion on November 6, 2023. There was no indication that the lesion was related to Plaintiff's HCV. *Id.* ¶ 39-40.

[11] *Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 658 (1978).

"[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citation omitted).

In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *In re Citizens Loan and Sav. Co.*, 621 F.2d 911, 913 (8th Cir.1980). Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800 (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## DISCUSSION

### I. Deliberate Indifference to a Serious Medical Need Under § 1983

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *See Smith-Dandrige v. Geanolous*, 97 F.4th 569, 575 (8th Cir. 2024) (citing *A.H. v. St. Louis Cnty.*, 891 F.3d 721, 726 (8th Cir. 2018)); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

"Deliberate indifference has two components: an objective component, which requires plaintiff to demonstrate an objectively serious medical need, and a subjective component, which requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id.* (internal citations and quotations omitted); *see also Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018). A serious medical need is

10

"one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Dadd v. Anoka Cnty.*, 827 F.3d 749, 755 (8th Cir. 2016).

"Deliberate indifference is equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 914-915 (8th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994)). Under this standard, an official is deliberately indifferent "if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 916 (citing *Farmer*, 511 U.S. at 847).

An inmate who alleges delay in medical care "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).

## II.     Corporate Entity Liability under § 1983

"A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to maintain a § 1983 claim against a corporate entity, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (discussing a § 1983 claim against a prison medical provider); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable under §

11

1983 for its own unconstitutional policies."). The burden is on the Plaintiff to establish that a municipal policy or custom was the "moving force" behind the constitutional violation. *Watkins v. City of St. Louis*, 102 F.4th 947, 953 (8th Cir. 2024) (citing *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)).

"A 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal officer who has final authority regarding such matters." *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) (quotation and citation omitted). To establish liability based on an "unofficial" policy or a "custom," a plaintiff must show "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [corporate entity's] employees; (2) deliberate indifference to or tacit authorization of such conduct by the [corporate entity's] policymaking officials after notice to the officials of that misconduct; and (3) that [he] was injured by acts pursuant to the [corporate entity's] custom, i.e., that the custom was a moving force behind the constitutional violation." *Meier v. City of St. Louis*, 934 F.3d 824, 828 (8th Cir. 2019) (cleaned up and citations omitted).

Finally, to establish liability for failure to train or supervise, a plaintiff must show "(1) the [corporate entity's]…training practices were inadequate; (2) the [corporate entity] was deliberately indifferent to the rights of others in adopting these training practices, and the [corporate entity's] failure to train was a result of deliberate and conscious choices made; and (3) the [corporate entity's] alleged training deficiencies caused [his] constitutional deprivation." *Watkins*, 102 F.4th at 954 (citing *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013)) (internal quotations omitted). To show

12

deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005) (internal citation omitted). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

### III.     Plaintiff's HCV Treatment

There is no dispute that Plaintiff's HCV was an objectively serious medical need, and thus the Court's analysis focuses on the subjective component. Plaintiff alleges that he was denied treatment for his HCV because he was not deemed a priority. Viewing the undisputed evidence in the record, the Court finds that no reasonable trier of fact could conclude that Centurion's initial decision to monitor Plaintiff's condition and subsequently successfully treat Plaintiff's HCV amounted to deliberate indifference. *See Cody v. Hastings*, No. 4:16 CV 1632 (JMB), 2018 WL 6830098, at *7-8 (E.D. Mo. Dec. 27, 2018) (finding no deliberate indifference when the plaintiff's HCV was merely monitored and not treated with direct acting antiviral medication); *see also Fleeman v. Mo. Dep't of Corr.*, No. 2:20-cv-00081-JAR, 2021 WL 2916709, at *7-8 (E.D. Mo. July 9, 2021) (dismissing claims against a corporate entity that categorized a defendant diagnosed with HCV as "priority three" under 28 U.S.C. § 1915(b)(1) for failure to show that the policy inflicted an actionable injury under § 1983); *Clay v. Corizon Health LLC*, No. 4:21 CV 877 MTS, 2021 WL 4963520, at *5 (E.D. Mo. Oct. 26, 2021) (same).

On June 15, 2022, Plaintiff visited sick call complaining of symptoms related to

13

his HCV, including fatigue and diarrhea.  Centurion reviewed Plaintiff's lab results and determined that his condition was stable.  It was on this basis that Centurion categorized Plaintiff as "Priority 2" and continued to monitor him.  After Plaintiff complained of prolonged diarrhea in September 2022, Centurion ordered an abdominal ultrasound to review the condition of Plaintiff's liver and referred Plaintiff for a CT scan.  Once Plaintiff's labs showed more significant increases in his APRI and FIB-4 scores, as well as other monitored enzyme levels, he was prescribed a twelve-week treatment of the DAA drug Epclusa to treat his HCV beginning on November 2, 2022.  By May 4, 2023, the treatment was successful and Plaintiff's viral load was undetectable.

Viewing the evidence in the record, the Court finds that no reasonable factfinder could conclude that Centurion's decision to monitor Plaintiff's health and subsequently treat his HCV with a DAA drug rose to the level of criminal recklessness.  *Smith-Dandridge*, 97 F.4th at 576; *see also Bender v. Regier*, 385 F.3d 1133, 1138 (8th Cir. 2004) (finding no deliberate indifference when a plaintiff with HCV was treated and referred to a specialist, but not provided with DAA drugs); *Cody*, 2021 WL 6830098, at *7 (finding that the decision to monitor the plaintiff's HCV instead of providing treatment with DAA drugs did not rise to the level of deliberate indifference); *Hankins v. Russell*, No. 4:15CV697 HEA, 2016 WL 5689892, at *9 (E.D. Mo. Oct 3, 2016) (finding no deliberate indifference when defendant failed to provide medication to plaintiff diagnosed with HCV).  "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact merely by stating that he did not feel he received

14

adequate treatment." *Cejvanovic v. Ludwick*, 923 F.3d 503, 508 (8th Cir. 2019); *see also Fourte v. Faulkner Cnty.*, 746 F.3d 384, 390 (8th Cir. 2014) (no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner").

To the extent that Plaintiff contends that Centurion improperly delayed his treatment, his claim similarly fails because he has not submitted any medical evidence that he suffered any detrimental effects from the alleged delay. *Redmond v. Kosinski*, 999 F.3d 1116, 1121 (8th Cir. 2021) (finding the plaintiff could not show deliberate indifference where he failed to provide verifying medical evidence establishing the detrimental effect of his delay in treatment); *see also Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (same).

Because Plaintiff has not established an underlying constitutional violation, he cannot establish Centurion's liability for its policy of prioritizing certain inmates diagnosed with HCV. *Watkins*, 102 F.4th at 953 (recognizing that Plaintiff bears the burden to establish that the policy was the "moving force" behind the constitutional violation); *Corwin*, 829 F.3d at 700 ("In order for municipal liability to attach, individual liability must first be found on an underlying substantive claim.").

## CONCLUSION

Based upon the foregoing analysis, Centurion is entitled to judgment as a matter of law. The undisputed material facts establish that Centurion has not been deliberately indifferent to Plaintiff's serious medical needs. As such, Centurion's motion for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Centurion's Motion for Summary Judgment is **GRANTED.** ECF No. 36.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of March, 2025.